

Signed/Docketed
February 19, 2015

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

In re: )
) Case No. 14-13514 MER
NAZIR KHAN )
) Chapter 13
Debtor. )

## ORDER

This matter comes before the Court on the Debtor's request to confirm his current amended plan, and the objections thereto filed by John Berman ("Berman"), the Chapter 13 Trustee ("Trustee"), and Nuguest Shawl ("Shawl"). Based on the evidence and legal arguments presented by the parties, the Court makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L) as it involves the administration of the estate and confirmation of the Debtor's amended plan.

## BACKGROUND FACTS

Debtor Nazir Khan ("Khan") filed his voluntary Chapter 13 petition on March 21, 2014 ("Petition Date"). Khan has filed four proposed plans during the pendency of this case.[1] His most recent amended plan (the "Plan") dated September 2, 2014, is currently before the Court.

The Plan provides for Class 4 unsecured creditors to receive approximately $25 over 60 months. The Plan estimates total attorney's fees of $12,000, with $2,100 paid prepetition and $9,900 to be paid through the Plan, plus estimated costs of $300. Further, the Plan proposes to pay $11,499 in

---

[1] *See* Docket No. 2, Chapter 13 Plan; Docket No. 29, Amended Chapter 13 Plan; Docket No. 71, Amended Chapter 13 Plan; and Docket No. 105, Amended Chapter 13 Plan.

federal priority taxes and $1,792 in state priority taxes. Plan payments are $438 per month.[2]

The Plan and Khan's schedules list a one-half equitable interest in a residence located at 22655 East Fremont Place in Aurora, Colorado (the "Property"). The parties stipulated to a total value for the Property of $430,000, less a lien in the amount of $283,773, less costs of sale of approximately 8%, or $34,400.[3] Khan claims a $60,000 homestead exemption in the Property.[4]

Khan testified he and his sister, Roenna Khan, each obtained a one-half interest in the Property as the result of a probate action following the death of their mother.[5] Since November of 2013, Khan's one-half interest in the Property has been held in the name of his wife, Zaibi Khan.[6]

On his Petition Date, Khan had no income and relied entirely on his wife's income. He subsequently amended Schedules I and J to reflect income from a restarted home-based daycare business. His amended Schedule J indicates joint monthly income for himself and his wife of $4,261, including an anticipated $1,550 per month from his restarted business, plus another $880 to be provided by an increase in net business income or occasional contributions from his wife's family to cover expenses.[7]

---

[2] *See* Third Amended Plan (Docket No. 105).

[3] *See* Stipulated Facts filed by the Chapter 13 Trustee and Khan (Docket No. 143). Although Khan has conceded he does not hold legal title to the Property, but claims only an "equitable" one-half interest, the Stipulated Facts provide Khan "owns" a one-half interest in the Property. *Id.*

[4] *See* Status Report and Stipulated Facts With Respect to Berman Objection (Docket No. 144). *See also*, Amended Schedule C (Docket No. 148).

[5] *See* Khan's Exhibit 12 and Berman's Exhibit F, Settlement Agreement as to probate dispute.

[6] Khan's 50% interest was originally held in a limited liability company, Zaibi, LLC, of which he was the sole member. In order to settle the probate matter, the lien against the property needed to be refinanced. Khan testified Zaibi, LLC's interest in the Property was transferred to his wife in November 2013, to facilitate the refinancing because her credit score was higher. *See* Khan's Exhibits 4, 5, 6, and 7.

[7] *See* Amended Schedules I and J (Docket No. 140).

**DISCUSSION**

With respect to confirmation of a Chapter 13 plan, "[t]he controlling section of the Bankruptcy Code is § 1325."[8] As the Debtor, Khan bears the burden of proof concerning the elements of 11 U.S.C. § 1325(a).[9] [10]

**A. The Plan As Proposed Does Not Meet the Best Interests of Creditors Test**

Section 1325(a)(4), known as the "best interests of creditors test," provides the Court shall confirm a plan if:

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date. . . .[11]

The Chapter 7 Reconciliation in Khan's Plan indicates no value would be available to pay unsecured creditors in Chapter 7 case following a sale of his interest in the Property. Under the Plan, the unsecured creditors would receive approximately $25. Therefore, in order to meet the best interests of creditors test, Khan must demonstrate a Chapter 7 liquidation would yield $25 or less to unsecured creditors.

At the outset, the Court expresses some concern as to whether the Property is actually property of the estate; but this issue is not before the Court at this time. Rather, the parties have stipulated Khan holds a one-half interest in the Property.[12] Accordingly, for the limited purposes of this opinion only, the

---

[8] *In re Arrigo*, 399 B.R. 700, 702 (Bankr. D. Colo. 2008).

[9] *In re McDonald*, 508 B.R. 187, 205 (Bankr. D. Colo. 2014) (citing *In re Anderson*, 173 B.R. 226, 229 (Bankr. D. Colo. 1993) and *Lincoln v. Cherry Creek Homeowners Ass'n (In re Lincoln)*, 30 B.R. 905, 910 (Bankr. D. Colo. 1983)).

[10] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[11] § 1325(a)(4).

[12] *See* Docket No. 143, Stipulated Facts by Khan and the Chapter 13 Trustee, stating Khan owns a one-half interest in the Property; and Docket No. 144, Stipulated Facts by Khan and Berman, agreeing Khan claims a 50% equitable interest in the Property. In addition, Berman's objection to confirmation (Docket 109, pp. 2-3), while arguing Khan is not entitled to his claimed homestead exemption, also contends the value of Khan's interest in the

Court will accept the parties' stipulation that the Property is property of the estate.

Turning to § 1325(a)(4), the Court finds the creditors would receive more in a Chapter 7 case than would be received through the Plan. In a typical Chapter 7 case, a trustee would almost certainly sell the entire property free and clear of liens, and divide the proceeds between the estate and the non-debtor co-owner.[13] Therefore, the relevant comparison is the proposed $25 unsecured creditor distribution under the Plan, versus what would be available in a Chapter 7 liquidation where the Property was sold and the proceeds divided between the estate and Roenna Khan.

First, the Court must address the homestead issues raised by the parties. COLO. REV. STAT. § 38-41-201 provides for a $60,000 homestead exemption "for a homestead occupied as a home by an owner thereof." As noted by the Colorado Court of Appeals, a co-tenant who is not capable of occupying the residence cannot claim the homestead exemption.[14] In addition, as previously noted by the United States Court of Appeals for the Tenth Circuit and this Bankruptcy Court, only one homestead exemption exists for each piece of real property, and the exemption attaches to the real property and not to the individual debtor.[15] In other words, the homestead exemption may not be claimed by a joint owner to the exclusion of the other joint owners.[16]

Khan argues he is entitled to take the full $60,000 homestead exemption available under COLO. REV. STAT. § 38-41-201, because the co-owner of the property, his sister Roenna Khan, cannot occupy the property as she is a resident of the United Arab Emirates. For the limited purposes of evaluating the confirmability of the Plan, the allocation of the claimed homestead exemption between Khan's estate and Roenna Khan is irrelevant.[17]

---

Property should be used in evaluating the best interests of creditors.

[13] *See* § 363(h).

[14] *University National Bank v. Harsh*, 833 P.2d 846, 847 (Colo. App. 1992).

[15] *In re Pruitt*, 829 F.2d 1002, 1005 (10th Cir. 1987); *In re Lambert*, 34 B.R. 41, 43 (Bankr. D. Colo. 1983).

[16] *Id*, at 1002.

[17] The Court also notes the issue of any homestead exemption to which Mrs. Khan may be entitled is not before the Court. The arguments of the parties centered around Roenna Khan's entitlement to a homestead exemption claim.

Second, the Court must consider the potential proceeds for the estate in a liquidation scenario. Although the *Dickinson* case discussed by the parties is factually distinguishable from this case, *Dickinson* provides the correct framework for calculating the equity remaining after a trustee's sale.[18] Specifically, the appropriate calculation is as follows:

| | |
|---|---|
| Stipulated Value of Property | $430,000.00 |
| Less Stipulated 8% Costs of Sale | – 34,400.00 |
| | $395,600.00 |
| Less Mortgage Payoff | – 283,773.00 |
| | $111,827.00 |
| Less Claimed Homestead Exemption | – 60,000.00 |
| Proceeds to be divided between co-owners | $51,827.00 |

Thus, deducting the full $60,000 homestead exemption from the proceeds of the sale following the payment of the costs of sale and the mortgage lien results in proceeds of $51,827.[19] Assuming Khan is entitled to one-half of such proceeds, dividing $51,827 by two equals $25,913.50. Thus, a Chapter 7 liquidation would result in potential distribution of approximately $25,913.50 to unsecured creditors, far in excess of the $25 provided in the Plan.

Accordingly, the Plan does not meet the best interests of creditors test and confirmation must be denied under § 1325(a)(4).

## B. Khan Has Not Demonstrated the Plan is Feasible

Section 1325(a)(6) requires a debtor to demonstrate he will "be able to make all payments under the plan and to comply with the plan."[20] This requirement is frequently described as the "feasibility" requirement.[21] As the United States District Court for the District of Massachusetts has recently noted:

---

[18] *Id.* at 78.

[19] If Roenna Khan or Mrs. Khan were able to assert entitlement to one-half of the homestead exemption, the amount available to creditors would of course be more. However, this does not change the conclusion the Plan does not meet the best interests of creditors test. Therefore, the Court need not reach that issue.

[20] Section 1325(a)(6).

[21] *See, e.g., Mort Ranta v. Gorman (In re Mort Ranta)*, 721 F.3d 241, 253 (4th Cir. 2013).

      To satisfy the feasibility requirement, "a debtor's plan must have a reasonable likelihood of success," and the debtor must be able to demonstrate that she has both the present and future capacity to meet the requirements of the proposed plan. [*In re Fantasia*, 211 B.R. 420, 423 (1st Cir. BAP 1997)]; *see also In re Lundahl*, 307 B.R. 233, 244–45 (Bankr. D. Utah 2003) (concluding that a proposed Chapter 13 plan was not feasible where the debtor's proposed budget was unrealistically lean, rendering the debtor's future ability to satisfy the terms of the plan unlikely); *In re Heck*, 355 B.R. 813, 823–25 (Bankr. D. Kan. 2006) (holding that the debtor's plan was not feasible because she did not have sufficient income to make all payments under the plan). In a situation where a debtor's ability to make payments under the proposed Chapter 13 plan is contingent on the refinancing of assets or the selling of properties, a bankruptcy court will deny confirmation where it considers the contingency to be too speculative. *Cf., e.g., In re Gavia*, 24 B.R. 216, 218 (Bankr. E.D. Cal. 1982) (denying confirmation of a Chapter 13 plan which proposed the sale of the debtor's home to generate funds to pay creditors), *aff'd*, 24 B.R. 573 (9th Cir. BAP 1982).[22]

      Here, Khan's most recent Schedules I and J show Khan has no current income. Rather, he has only speculative income in connection with his recently-restarted daycare business, and undocumented "occasional contributions" from his wife's family. He has provided no documentation or evidence in the form of proof of enrollment, pricing, etc. for his prediction his gross monthly business income will increase to $2,532.[23] Further, neither Khan's wife nor any other member of her family presented testimony or documentation to demonstrate they would actually provide any "contributions." He also lists income from food stamps in the monthly amount of $610, but there is no indication such funds could be used to assist in making Plan payments. Khan testified he has been making his monthly Plan payments, but no other information was provided to suggest his Plan is feasible.

---

    [22] *Austin v. Bankowski (In re Austin)*, 519 B.R. 559, 566 (D. Mass. 2014). *See also In re Ford*, 345 B.R. 713, 722 (Bankr. D. Colo. 2006) (feasibility under § 1325(a)(6) was the "most important criterion" for confirmation of a Chapter 13 plan.).

    [23] *See* Amended Schedules I and J (Docket No. 140) and attached list of expected day care income and expenses. This apparent "projection" contains mere numbers, with no documentation or testimony to support why Khan believes the numbers to be useful in projecting income and expenses. Therefore the projections are of no assistance in evaluating feasibilty.

For these reasons, the Court finds Khan has failed to demonstrate the Plan is feasible and as independent grounds under § 1325(a)(6), confirmation must be denied.

### C. Khan Has Not Shown the Plan Is Proposed in Good Faith

Section 1325(a)(3) requires a plan to be proposed in good faith.[24] Determination on this issue must be made on a case by case basis, looking at the totality of the circumstances.[25]  In order to determine whether a Chapter 13 plan was filed in good faith under § 1325(a)(3), the United States Court of Appeals for the Tenth Circuit historically applied the following non-exhaustive list known as the *Flygare* factors:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.[26]

Almost thirty years after *Flygare* was decided, the Tenth Circuit in *Cranmer* noted the Bankruptcy Code was amended to include § 1325(b), containing "ability to pay" criteria which subsumed most of the *Flygare* factors and gave the good faith inquiry "a more narrow focus."[27]  The *Cranmer* Court

---

[24]  *See Pioneer Bank of Longmont v. Rasmussen (In re Rasmussen)*, 888 F.2d 703, 704 (10th Cir. 1989).

[25]  *In re Young,* 237 F.3d 1168, 1174 (10th Cir. 2001)(citing *Rasmussen*, 888 F.2d at 704).

[26]  *In re Cranmer*, 697 F.3d 1314, 1318-19 (10th Cir. 2012) (citing *Flygare v. Boulden*, 709 F.2d 1344, 1347-48 (10th Cir. 1983)).

[27]  *Id.* at 1319, n.5.  *See also In re McGehan*, 495 B.R. 37, 42 (Bankr. D. Colo. 2013) (determining the "more narrow focus" applied by the Eighth Circuit over the past 25 years applies in the Tenth Circuit.).

indicated a bankruptcy court must also consider "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."[28]

   *1.   Whether Khan has stated his debts and expenses accurately.*

The speculative and undocumented nature of Khan's estimated future income also applies to a determination as to whether he has met his burden of proof to show the Plan was proposed in good faith. The lack of information as to actual records of Khan's newly-restarted home-based business, and the unsupported assertion his spouse's family will make unspecified contributions as necessary suggest Khan proposed the Plan knowing it has no stable source of funding.

   *2.   Whether Khan has made any fraudulent misrepresentations to mislead the Court.*

The Court finds much of Khan's testimony to be disingenuous and lacking in credibility. Khan bases his ability to make future Plan payments on income which he cannot prove. Further, the Plan cannot meet the best interests of creditors test even if the Court uses Khan's agreed valuation of the Property and allows his full claimed exemption. Khan's assertions as to his ability to fund the Plan show at the least a reckless disregard for his true financial position.

   *3.   Whether Khan has unfairly manipulated the Bankruptcy Code.*

The Court finds Khan's inability to propose a confirmable plan on four attempts, while avoiding payments to his creditors for almost a year, indicates manipulation of the Bankruptcy Code. Further, although, as noted herein, the propriety of Khan's interest in the Property is not before the Court, Khan's assertion of an equitable interest in the Property after transferring title, ostensibly for refinancing, points to his willingness to manipulate his assets and the Bankruptcy system for his own purposes.

   *4.   The amount of the proposed Chapter 13 payments and the amount of Khan's surplus.*

Khan's amended Schedule I indicates the only current income for the household is $1,316 in gross monthly income earned by his spouse, plus $610 in food stamps. The $1,827 monthly payment on the Property's first mortgage significantly exceeds the $1,316 in income earned by Khan's spouse.

---

[28] *Cranmer*, at 1319 n.5. *See also Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 668 n.7 (10th Cir. 1993).

Subtracting the $1,555 in monthly income Khan hopes to make from his business, and the $880 in monthly income Khan apparently expects from the business or his wife's relatives, neither of which speculation is supported by evidence, leaves actual monthly income of $1,316 plus $610 for food expenses (total $1,926).  Khan's amended Schedule I lists $3,283 in monthly expenses, of which $635 is for food.  Subtracting the actual monthly income from these expenses leaves Khan's household with a $1,357 shortfall, not a $438 surplus.

> 5. *Khan's employment history, ability to earn and likelihood of future increases in income.*

Despite Khan's optimistic and purely speculative projections, there is no evidence he currently has income other than food stamps.  The lack of documentation as to his recently-restarted business also supports a finding the likelihood of the future increases in income he asserts are purely ephemeral.

> 6. *The probable or expected duration of the plan.*

The sixty-month proposed duration of the Plan is a neutral factor and has no impact on the good faith analysis in this case.

> 7. *The accuracy of the Plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court.*

As noted above, the Court finds Khan's assertions as to his ability to make payments on priority unsecured debt and general unsecured debt, and his assertions about income and expenses, to be unsupported at best, and deliberately misleading at worst.  The Court finds Khan's testimony as to his expected ability to make plan payments and repay debt under the Plan to be lacking in credibility.

> 8. *The extent of preferential treatment between classes of creditors.*

This factor is not applicable to this case.

> 9. *The extent to which secured claims are modified.*

This factor is not applicable to this case.

> 10. *The type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7.*

The debt sought to be discharged through the Plan would not be dischargeable in Chapter 7, as it consists of $13,291.70 in non-dischargeable

Page 9 of  11

priority tax debt under § 523(a)(1) and § 507(a)(8). The other debt consists of administrative claims, namely attorneys' fees and costs, and Trustee fees. There is no secured debt covered by the Plan, and only $25.46 goes to general unsecured creditors, on listed general unsecured debt of $285,000. Thus, there is functionally no benefit to unsecured creditors to be obtained by the Plan, even if Khan made the proposed payments.

> 11.  *The existence of special circumstances such as inordinate medical expenses.*

No such circumstances have been identified.

> 12.  *The frequency with which Khan has sought relief under the Bankruptcy Reform Act.*

There is no indication Khan has filed previous cases.

> 13.  *The motivation and sincerity of Khan in seeking Chapter 13 relief.*

The Court finds the fact Khan proposed a plan which he knew or should have known to be infeasible supports a finding of an improper motivation and lack of sincerity in seeking Chapter 13 relief.

> 14.  *The burden which the Plan's administration would place upon the Chapter 13 Trustee.*

The Trustee provided no information as to the burden of the Plan's administration.

Thus, after considering the evidence and the record, the Court finds the applicable *Cranmer* and *Flygare* factors as applied to this case are indicative of Khan's bad faith in filing the Plan, providing a third basis for denying confirmation.

**D.   Disposition of the Case**

Section 1307(c) provides:

> On request of a party in interest, or the United States trustee after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including —

>   (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or modification of a plan. . . [29]

Berman's Objection to Confirmation seeks conversion of the case. The Chapter 13 Trustee's Objection seeks dismissal of the case. Shawl's Objection to Confirmation simply seeks denial of confirmation. At trial, neither Khan nor his attorney gave any indication as to whether Khan would request permission to file another plan.

However, the Court having considered all the evidence presented at the hearing, finds allowing Kahn to propose yet another amended plan would be unproductive, as there is no evidence showing Khan's ability to propound a confirmable plan will improve in the future. In addition, the Court finds the conversion of this case would not benefit general unsecured creditors, given the listed amount of priority and administrative debt.[30] Therefore, the Court finds dismissal of the case is in the best interest of all creditors and the estate under § 1307(c).

## CONCLUSION

For the reasons stated above,

IT IS ORDERED confirmation of the Amended Chapter Plan filed September 2, 2014 at Docket No. 105 is DENIED.

IT IS FURTHER ORDERED the above-captioned case shall be dismissed by separate order.

Dated February 19, 2015                     BY THE COURT:

                                            Michael E. Romero
                                            United States Bankruptcy Judge

---

[29] Section 1307(c)(5).

[30] Assuming recovery of approximately $23,913.50, payment of the $13,291 in priority tax claims and $12,300 in listed attorneys' fees and costs would leave a shortfall of approximately $1,676.50.